PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2524
_____

UNITED STATES OF AMERICA

v.

CRAIG ALAN FINLEY,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1-11-cr-00004-001)
District Judge:  Honorable Maurice B. Cohill, Jr.
_____

Argued May 14, 2013
Before:  SMITH, FISHER and CHAGARES, *Circuit Judges*.

(Filed: August 12, 2013)

Karen S. Gerlach, Esq. (ARGUED)
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA  15222
         *Counsel for Appellant*

David J. Hickton, Esq. (ARGUED)
Robert L. Eberhardt, Esq.
Rebecca R. Haywood, Esq.
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219

Christian A. Trabold, Esq.
Office of United States Attorney
17 South Park Row, Room A330
Erie, PA  16501
         *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Craig Alan Finley was convicted in the U.S. District Court for the Western District of Pennsylvania of production, receipt, distribution, and possession of material depicting the sexual exploitation of a minor.  Finley appeals from the District Court's judgment of conviction and sentence of 50

2

years' imprisonment followed by a life term of supervised release.  For the following reasons, we will affirm.

## I.

### A.

The events leading to Finley's indictment and conviction began in 2010 when FBI Agents Marc Botello of Los Angeles, California and Barry Couch of Rochester, New York commenced independent undercover investigations using GigaTribe, a peer-to-peer online file-sharing program. The agents performed "takeovers" of third party accounts, which allowed them to share files and engage in chats with other users.  A user with the screen name Boys4me2010 allowed the agents to access his files, including a number of videos and images that contained child pornography.  On one occasion, after Boys4me2010 implied that he was sexually involved with a child, Agent Couch asked for the child's name, and Boys4me2010 gave it.  Agent Couch then identified one of Boys4me2010's folders that was titled with the child's name and contained images of a young boy. Thereafter, the agents independently identified Boys4me2010's Internet Protocol ("IP") address, traced the IP address to its provider, Armstrong Cable Services, in Butler, Pennsylvania, and subpoenaed the company for information pertaining to the owner of the IP address. Armstrong responded in each instance that the IP address belonged to Craig Finley of Titusville, Pennsylvania.

Agent Michael Shaffer of the Erie, Pennsylvania FBI office became involved in the investigation after receiving

3

leads from Agents Botello and Couch. On December 23, 2010, Agent Shaffer executed a search warrant for Finley's apartment, and although he found no one inside, he did find a running computer. In order to wake the computer, Agent Shaffer moved its mouse, which allowed him to identify a GigaTribe account with the screen name Boys4me2010. He saw images that Boys4me2010 was sharing, including an image of the torso of a boy who was sitting on a green couch. Agent Shaffer saw the same couch in Finley's apartment.

Pennsylvania State Police Corporal Robert Pearson, a federally deputized law enforcement officer who is an expert in computer forensics, conducted examinations of two computers that were seized from Finley's apartment. The computers contained Finley's resume, a link to Finley's Facebook page, and a GigaTribe account for Boys4me2010, along with explicit examples of sharing, distributing, and receiving child pornography. Corporal Pearson estimated that Boys4me2010 had engaged in conversations about sharing, distributing, and receiving child pornography with hundreds of GigaTribe users. He also estimated that there were approximately 30,000 videos and images of child pornography on the two computers.

## B.

On July 12, 2011, a grand jury indicted Finley on a four-count superseding indictment: Count One, production of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a), (e); Count Two, receipt of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(2), (b)(1); Count Three,

4

distribution of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(2), (b)(1); and Count Four, possession of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2).

Finley pled not guilty and went to trial. Before the jury was selected, defense counsel offered to stipulate that the videos and images obtained from the computers in Finley's apartment were in fact child pornography (i.e., material depicting the sexual exploitation of a minor) on the condition that the government would not show the videos and images to the jury. The government refused on the basis "that a Defendant cannot stipulate away the Government's evidence," and the District Court ruled that the government was not required to accept the offer. App. at 62-63.

The District Court informed the potential jurors that they might be shown graphic images of child pornography:

"There will likely be explicit language and photographs in this case which will depict children involved in sexually explicit activities. I will tell you, give you a couple of examples. You will likely see pictures and movies of young boys performing oral sex on adult males or other young boys. You will also likely see pictures and movies of adult men performing anal sex on young boys. You will also likely see pictures and movies of young boys engaging in anal sex.

5

The question is, I understand that it may be difficult for you to hear such language or view these pictures; however, due to the nature of the case some exposure to this material will be necessary. It is important that you be able to set aside any personal feelings you may have about the material that you see and fairly consider the evidence to consider whether this Defendant is guilty of any of the charges.

Will the mere subject matter of this case affect your ability – the ability of any of you to listen and later fairly discuss the evidence with other jurors and act as a fair and impartial juror?"

*Id.* at 115-16. One juror was excused following this question.

Despite the District Court's ruling that the government was not required to accept defense counsel's offer to stipulate to the content of the videos and images, defense counsel made the following remarks in his opening statement:

"I will tell you right now the images that are being distributed and received through the GigaTribe program on these computers, they're images of child pornography. They are minors engaged in sexually explicit conduct . . . .

So if the prosecutor chooses to still show them to you, even though we are not disputing that fact, he has the right to show them if he chooses, but I am telling you we're not

6

> disputing it. I will stand up in my closing argument and tell you that the images are images of minors engaging in sexually explicit conduct. If they still choose to show the images to you, they're doing it in the hopes that you will be so horrified you will stop thinking and you will be so horrified you will want to convict somebody because you will be so angry at what you see. Then the person they're going to parade in front of you is Craig [Finley]."

*Id.* at 199-200.

Before Agent Botello testified, defense counsel objected to four videos that the government intended to show to the jury. Specifically, defense counsel argued that their admission was unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. The District Court, after viewing the content of the videos, allowed their admission, stating:

> "Well, I am not going to try to describe them other than to say in each case there are individuals on the screen committing oral sodomy, and I think it's part of this prosecution so I am going to let them in."

*Id.* at 207. Defense counsel then stated that the District Court still had to balance the probative value and prejudicial effect of the videos under Rule 403. The District Court responded: "Right. And I think that the probative value outweighs the possible prejudice." *Id.* The four videos were then shown to the jury. *Id.* at 260-62; Gov't Exs. 1A, 1B, 1C, and 1D.

7

Again, before Agent Couch testified, defense counsel objected to nine videos and two images that the government intended to show to the jury. The District Court, after viewing the videos and the images, allowed their admission, stating:

> "I don't think it is necessary for me to put on the record what I think I have just seen. The pictures will speak for themselves. But I understand where [defense counsel] is coming from and I would simply say that they are I think relevant to the entire prosecution here and on balance the possible prejudice is outweighed by the probative value."

*Id.* at 277. The nine videos and two images were then shown to the jury. *Id.* at 326-32; Gov't Exs. 4B, 4C, 4D, 4E, 4F, 4G, 4H, 4I, 4J, 4K (image), 4L (image).

Finally, during the testimony of Corporal Pearson, defense counsel renewed his objection to the showing of more child pornography. He argued that the jury had reached a "saturation point." App. at 479. The District Court stated that the "[r]uling is the same." *Id.* At one point thereafter, the government acknowledged that at least several members of the jury "were visibly and openly crying" after seeing "[p]ictures of six-, seven-, eight-year-old boys being anally raped and crying while it occurs." *Id.* at 867.

During the charge conference, defense counsel, with regard to Count One, objected to the government's proposed jury instruction that "[e]ven a sleeping child can engage in

sexually explicit conduct when, for example, another person uses the child to create sexually explicit conduct." *Id.* at 542-43. The District Court allowed the instruction, but stated, "I think I am going to modify it and say: Even a sleeping child can be said to have engaged." *Id.* at 543. After the government rested its case, defense counsel made a motion for judgment of acquittal on Count One under Rule 29 of the Federal Rules of Criminal Procedure and argued that as a matter of law a sleeping child cannot "engage in" sexually explicit conduct. The government's evidence with regard to Count One showed that the child at issue was asleep at the time of the events in question. The District Court denied the motion, stating:

> "Well, I think we discussed that briefly in chambers on the record, but I think under all the circumstances while they are not explicitly engaged in what we might think of as the common terminology, I think here what they're talking about is there was explicit contact with him; and even though he didn't participate, because he was asleep, I think under the legal definition he did engage in sexual activity . . . . So we will deny the motion."

*Id.* at 676. The District Court, in its charge to the jury, stated:

> "Even a sleeping child can be said to have been engaged in sexually explicit conduct when, for example, another person uses the child to create the sexually explicit conduct."

9

*Id.* at 790. After the District Court charged the jury, defense counsel renewed his objection, and the District Court declined to change its position. On January 26, 2012, the jury returned a verdict of guilty on all four counts.

The counts on which Finley was convicted came with statutory maximums: 30 years for Count One; 20 years for Count Two; 20 years for Count Three; and 10 years for Count Four. According to the Probation Office's Presentence Report ("PSR"), no sentence could be imposed at Count Four because it was a lesser included offense of Count Two. Also, the PSR noted that, based on Finley's total offense level and criminal history, the advisory Sentencing Guidelines called for life imprisonment. Because the sentence on the count carrying the highest statutory maximum (i.e., Count One at 30 years) was less than life imprisonment, the PSR advised that the sentence imposed on one or more of the other counts "shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." PSR ¶ 63 (citing U.S.S.G § 5G1.2(d)).

Finley objected to the PSR by arguing that the violations under Counts Two and Three for receipt and distribution of material depicting the sexual exploitation of a minor were violations of the same statutory provision, 18 U.S.C. § 2252(a)(2), and constituted alternative ways of proving the same offense. Finley thus asserted that consecutive punishments on these counts would violate the Double Jeopardy Clause of the Fifth Amendment. From this, Finley contended that his statutory maximum was 50 years, but that a sentence of 30 years would be sufficient. The government disagreed and argued that Finley's statutory

10

maximum should be 70 years, as a result of running the sentences at Counts One, Two, and Three consecutively. The government then asked for the maximum sentence. The District Court addressed Finley's objection and concluded that separate punishments would not violate the Double Jeopardy Clause in Finley's case. The District Court explained:

> "[T]he evidence established that the Defendant at a minimum distributed the images he produced in Count One separate and apart from images he received in Count Two. The evidence at trial also established that the Defendant received images that he did not possess and distributed different images that he already possessed. We agree with the government that the nature of the peer to peer network and this particular Defendant's conduct in trading images establishes that the charges of receipt and distribution are not identical."

App. at 11. The District Court thus agreed with the government that the statutory maximum was 70 years. At the May 8, 2012 sentencing hearing, the District Court sentenced Finley to a 30-year term of imprisonment at Count One, to be served consecutively with a 20-year term of imprisonment at Count Two. The District Court also imposed a 20-year term of imprisonment at Count Three to be served concurrently with the terms of imprisonment at Counts One and Two. The District Court did not impose a term of imprisonment at Count Four. This resulted in a total term of imprisonment of

50 years, plus a life term of supervised release.  Finley then filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## III.

### A.

Finley contends that the District Court committed procedural and substantive errors at trial with respect to Rule 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  A district court is generally afforded broad discretion on evidentiary rulings due to its "familiarity with the details of the case and its greater experience in evidentiary matters." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).  "This is particularly true with respect to Rule 403 since it requires an on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." *Id.* (internal quotation marks and citation omitted).  Under this deferential standard, if it is clear that the district court did in fact conduct a Rule 403 analysis, then we will

12

uphold the ruling "unless the district court has abused its discretion." *See id.*

1.

Finley asserts that the District Court committed a procedural error by not balancing the Rule 403 factors on the record, and that as a result, we must remand. We have previously stated that "[w]hen a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling. Where, however, the court fail[s] to perform this analysis, or where its rationale is not apparent from the record, there is no way to review its discretion." *United States v. Sampson*, 980 F.2d 883, 889 (3d Cir. 1992) (internal citation omitted); *see also Gov't of the V.I. v. Pinney*, 967 F.2d 912, 917-18 (3d Cir. 1992). In *Sampson* and *Pinney*, we found procedural errors where district courts failed to mention anything about probative value or prejudice surrounding particular evidence. *Sampson*, 980 F.2d at 889; *Pinney*, 967 F.2d at 917-18. Thus, in these cases, we were unable to conclude that the district court actually conducted a Rule 403 analysis.

Here, after viewing the first four videos that the government sought to admit, the District Court acknowledged that there were "individuals on the screen committing oral sodomy," and further stated that "I think it's part of this prosecution so I am going to let them in." App. at 207. After defense counsel objected that the court was required to balance the probative value and prejudicial effect of the videos, the District Court stated, "Right. And I think that the probative value outweighs the possible prejudice." *Id.* And,

13

after viewing another round of videos and considering another objection from defense counsel, the District Court stated, "I understand where [defense counsel] is coming from and I would simply say that they are I think relevant to the entire prosecution here and on balance the possible prejudice is outweighed by the probative value." *Id.* at 277. Although a more detailed explanation from the District Court would have been helpful, we hold that the District Court's statements were sufficient to satisfy the procedural requirements of Rule 403. Unlike in *Sampson* and *Pinney*, we are able to see that the District Court conducted a Rule 403 analysis, in which it simply concluded that probative value was not substantially outweighed by unfair prejudice.

2.

Finley also puts forth two rationales as to why the District Court committed a substantive violation of Rule 403. Because defense counsel offered to stipulate to the fact that the videos and images contained child pornography, Finley asserts that the videos and images were of no probative value, and thus, should not have been admitted. In the alternative, Finley asserts that the District Court erred in declining to exclude the very worst of the videos and images, and that its decision to admit the videos and images conflicts with this Court's precedent in *United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012).

With respect to the offered stipulation, the government is entitled to prove its case free from a defendant's preference to stipulate the evidence away. *Old Chief v. United States*, 519 U.S. 172, 189 (1997). As the Supreme Court remarked in

14

*Old Chief*, "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." *Id.* The government is thus entitled to put forward the relevant evidence that it chooses. *Cunningham*, 694 F.3d at 388. However, that evidence remains subject to Rule 403, *id.*, and the existence of a stipulation is a relevant factor in the Rule 403 balancing process. *Id.* at 386 n.23.

The government contends that because Finley's counsel merely offered to stipulate, and did not actually stipulate, the government still had to prove that Finley produced, received, distributed, and possessed material that met the legal definition of child pornography, and thus the videos and images were of great probative value. This contention, however, is without merit. Although we have yet to explicitly address whether the distinction between an offer to stipulate and an actual stipulation is pertinent for purposes of Rule 403, we have implicitly concluded that it is not. *See id.* at 391 ("[C]ourts are in near-uniform agreement that the admission of child pornography images or videos is appropriate, even where the defendant has stipulated, *or offered to stipulate*, that those images or videos contained child pornography.") (emphasis added). Furthermore, our sister courts of appeals have, on numerous occasions, treated an offer to stipulate the same as an actual stipulation for purposes of analyzing the admissibility of child pornography under Rule 403. *See, e.g.*, *United States v. Polouizzi*, 564 F.3d 142, 149, 153 (2d Cir. 2009); *United States v. Schene*, 543 F.3d 627, 642-43 (10th Cir. 2008); *United States v. Ganoe*, 538 F.3d 1117, 1123-24 (9th Cir. 2008); *United States*

15

*v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008); *United States v. Sewell*, 457 F.3d 841, 843-44 (8th Cir. 2006). Thus, the fact that defense counsel merely offered to stipulate instead of actually stipulating is of no consequence in this case.

The government's stronger contention as to the probative value of the videos and images is that they were necessary to show that Finley *knowingly* received, distributed, and possessed child pornography. Knowledge was an element of each of the crimes for which Finley was charged at Counts Two, Three, and Four. *See* 18 U.S.C. § 2252(a). Finley counters that the videos and images were not probative of a relevant fact because knowledge was never an issue; i.e., he never argued that he received, distributed, or possessed child pornography without knowing the subject matter with which he was dealing; instead, he argued that he was not the one responsible because someone else gained access to his computer. Finley's counter-argument is misplaced. "[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." *Estelle v. McGuire*, 502 U.S. 62, 69 (1991). In *Cunningham*, for example, the defendant asserted a similar defense with a similar stipulation, and before we ultimately determined that the District Court had committed a procedural error by not viewing the videos beforehand, we stated that "[e]ven with the parties' stipulation, we recognize that showing the video excerpts here had some probative value because they had a tendency to show that the offender *knew* the videos contain[ed] child pornography." 694 F.3d at 389 (emphasis added); *see also*

16

*Morales-Aldahondo*, 524 F.3d at 120 (admitting images even though the defendant offered to stipulate that the images contained child pornography and the defendant did not contest the knowledge element of the crime). Thus, even with the stipulation, the videos and images were probative of a material fact.

Finley argues in the alternative that the District Court's decision to admit the worst of the videos and images conflicts with our *Cunningham* precedent. In *Cunningham*, a district court judge permitted videos to be shown to the jury without first viewing the videos to determine whether the danger of unfair prejudice substantially outweighed the probative value of the videos under Rule 403. During Cunningham's trial, the government played two separate videos for the jury containing a total of seven video excerpts. The most disturbing of the video excerpts depicted bondage and other sadistic conduct against prepubescent children. 694 F.3d at 381-82, 390-91. The jury convicted Cunningham on all counts. We concluded that the district court committed a procedural error by not viewing the videos prior to admitting them into evidence, and that because of this procedural error, the district court's "underlying Rule 403 determination [was] not entitled to the full range of deference that we would normally give to it on appeal." *Id.* at 388. Consequently, we conducted our own Rule 403 analysis and held that, with regard to the most disturbing of the videos shown to the jury, "the potential prejudice to the defendant substantially outweighed any probative value that they might have." *Id.* at 391. Critically, we clarified that

17

> "we do not hold that the admission here of video excerpts or other images was *per se* improper. Indeed courts are in near-uniform agreement that the admission of child pornography images or videos is appropriate, even where the defendant has stipulated, or offered to stipulate, that those images or videos contained child pornography."

*Id.*

Finley's case differs significantly from *Cunningham* in at least one way: at Finley's trial, the District Court viewed the videos and images prior to admitting them into evidence. App. at 205-07, 276-77. Thus, unlike in *Cunningham*, the District Court's ruling warrants full abuse-of-discretion deference. After viewing the first set of videos, the District Court stated:

> "Well, I am not going to try to describe them other than to say in each case there are individuals on the screen committing oral sodomy, and I think it's part of this prosecution so I am going to let them in . . . . I think that the probative value outweighs the possible prejudice."

*Id.* at 207. And, after viewing the second set of videos and images, the District Court stated:

> "I don't think it is necessary for me to put on the record what I think I have just seen. The

18

pictures will speak for themselves. But I understand where [defense counsel] is coming from and I would simply say that they are I think relevant to the entire prosecution here and on balance the possible prejudice is outweighed by the probative value."

*Id.* at 277.

The District Court did not abuse its discretion in making such a determination under Rule 403. As analyzed above, the videos and images were probative of Finley's knowledge that he was receiving, distributing, and possessing child pornography. And, although some of the videos were extremely disturbing and absolutely prejudicial, their presentation was not *unfairly* prejudicial to the point where unfair prejudice substantially outweighed probative value.

The government showed the jury only thirteen video segments and two images[1] of what was a collection of more than 30,000 videos and images belonging to Boys4me2010. In addition, the District Court informed the potential jurors of the disturbing images they might see, asked the potential jurors if they could be fair, and even dismissed one potential juror who had doubts about her ability to be fair on the subject matter of child pornography. *See United States v. Dodds*, 347 F.3d 893, 899 (11th Cir. 2003) (finding

---

[1] It appears that two video segments lasting two seconds in duration may have been replayed for the jury during Corporal Pearson's testimony. *See* App. 478-81.

19

significant the fact that the trial court had taken pains to limit the danger of unfair prejudice by cautioning prospective jurors about the disturbing nature of the images and admitting only a small proportion of the images that were found in the defendant's possession).

In sum, with respect to Rule 403, we see no basis to disturb the District Court's judgment of conviction.

B.

With respect to his conviction for producing material depicting the sexual exploitation of a minor at Count One, Finley asserts that the District Court erred in instructing the jury that a sleeping child can "engage in" sexually explicit conduct within the context of § 2251. Finley's contention presents an issue of statutory interpretation. Section 2251(a) pertains to "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to *engage in* . . . any sexually explicit conduct." (emphasis added).

"The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. In such cases, the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms."). In construing a

20

provision's plain meaning, the definition of a word in isolation is not necessary controlling. *Dolan v. Postal Service*, 546 U.S. 481, 486 (2006). Depending upon context, "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities." *Id.*

Finley argues that § 2251(a)'s plain language cannot be interpreted to encompass situations involving sleeping children. Finley asserts that the statute requires the minor, as opposed to the perpetrator, to engage in the sexually explicit conduct. He also cites to multiple online dictionaries that, in many cases, define "engage," when used as an intransitive verb or followed by the word "in," as requiring active participation and involvement.[2]

Finley's focus on the word "engage" is too narrow. Section 2251(a) pertains to a person who "*employs*, *uses*, *persuades*, *induces*, *entices*, or *coerces* any minor to engage in . . . any sexually explicit conduct." (emphasis added). Congress's utilization of these verbs, especially "uses,"

---

[2] *See* Appellant's Br. at 52-53 (citing to online dictionaries for definitions of "engage" when used as an intransitive verb or followed by the word "in," including www.thefreedictonary.com ("to involve oneself or become occupied; participate; *engage in conversation*") (last visited July 30, 2013); www.oxforddictionaries.com ("participate or become involved in: *organizations engage in a variety of activities*") (last visited July 30, 2013); www.oed.com ("entangle, involve, commit, mix up") (last visited July 30, 2013)).

indicates that active involvement on the part of a minor is not essential for a conviction under § 2251(a). For example, a perpetrator can "use" a minor to engage in sexually explicit conduct without the minor's conscious or active participation.

Even if the plain language of the statute could be interpreted to support Finley's position, the result of such an interpretation would be absurd and against the obvious policy of the statute. In the only published opinion addressing this issue, the U.S. District Court for the Southern District of New York held that "[a]s a matter both of common sense and public policy, the statute must be construed to protect all children, including those who are unaware of what they are doing or what they are being subjected to, whether because they are sleeping or under the influence of drugs or alcohol or simply because of their age." *United States v. Levy*, 594 F. Supp. 2d 427, 443 (S.D.N.Y. 2009).[3] It would be absurd to suppose that Congress intended the statute to protect children actively involved in sexually explicit conduct, but not protect children who are passively involved in sexually explicit conduct while sleeping, when they are considerably more vulnerable.

---

[3] Two of our sister courts of appeals, without specifically addressing the issue, have, in published opinions, affirmed convictions under § 2251(a) where the material in question involved sleeping children. *See United States v. Vowell*, 516 F.3d 503 (6th Cir. 2008); *United States v. Wolf*, 890 F.2d 241 (10th Cir. 1989).

In sum, on the basis of statutory text, public policy, and persuasive case law, we hold that the District Court did not err by instructing the jury that a sleeping child can "engage in" sexually explicit conduct within the context of § 2251(a).

C.

Lastly, Finley asserts that the District Court violated his protection against double jeopardy by separately considering, for purposes of sentencing, his convictions for "receiv[ing]" and "distribut[ing]" material depicting the sexual exploitation of a minor under § 2252(a)(2). The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." This clause, among other things, "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). In order for multiple punishments to constitute a double jeopardy violation, the multiple charged offenses must be the same in law *and* in fact. *United States v. Felton*, 753 F.2d 276, 278 (3d Cir. 1985).

A determination of whether the multiple charged offenses are the same in law involves consideration of whether the statutory provision in question creates multiple offenses or only one offense that can be proven in alternative ways. *See United States v. Rigas*, 605 F.3d 194, 207 (3d Cir. 2010) (en banc). In contrast, a determination as to whether the two charged offenses are the same in fact involves consideration of whether the given conduct violated the statute multiple times or only once. *Id.* at 212. "The Double

23

Jeopardy Clause is not implicated when multiple separate violations of the same provision are charged in multiple counts." *United States v. Snyder*, 189 F.3d 640, 647 (7th Cir. 1999).

With respect to whether Finley's convictions for "receiv[ing]" and "distribut[ing]" material depicting the sexual exploitation of a minor were the same in law, we must examine § 2252(a)(2), which provides as follows:

> "Any person who knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce . . . if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct . . . shall be punished."

A natural reading of § 2252(a)(2) supports Finley's position that the provision creates one offense in law that can be proven in alternative ways. "When Congress crafts a statute to create distinct offenses, it typically utilizes multiple subsections or separates clauses with semicolons to enumerate separate crimes." *Rigas*, 605 F.3d at 209. Section 2252(a)(2), however, does not contain multiple subsections or separate clauses with semicolons to indicate separate crimes for "receiv[ing]" or "distribut[ing]" visual depictions of minors engaged in sexually explicit conduct, and thus § 2252(a)(2) does not create distinct offenses for "receiv[ing]" and "distribut[ing]" child pornography.

24

This conclusion, however, does not establish a double jeopardy violation in this case because Finley's separate convictions for "receiv[ing]" and "distribut[ing]" child pornography are not the same in fact. The evidence presented at trial shows that this was not a situation in which all of the child pornography in question was received at a distinct point in time into a computer network to which others had shared access – a situation where separate sentences for receipt and distribution of child pornography under § 2252(a) might raise a double jeopardy problem. Rather, as acknowledged by the District Court, "the evidence established that [Finley] at a minimum distributed the images he produced in Count One separate and apart from images he received in Count Two. The evidence at trial also established that [Finley] received images that he did not possess and distributed different images that he already possessed." App. at 11. Thus, Finley's charged offenses at Count Two (for receiving material depicting the sexual exploitation of a minor) and Count Three (for distributing material depicting the sexual exploitation of a minor) involved multiple violations of § 2252(a)(2) and were not the same in fact.

In sum, Finley's separate punishments for receiving and distributing material depicting the sexual exploitation of a minor did not violate the Double Jeopardy Clause.

IV.

We will affirm the District Court's judgment of conviction and sentence of 50 years' imprisonment followed by a life term of supervised release.

25