**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3877
_____

SHAUN AUSTIN,
                                        Appellant

v.

COUNTY OF NORTHAMPTON; C.O. LEON HILL;
C.O. JAMIE BRANNON; L.T. JOSEPH KOSPIAH
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 5-11-cv-02847)
District Judge:  Honorable Thomas N. O'Neill, Jr.

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 9, 2015
_____

Before:  CHAGARES, SHWARTZ, and RENDELL, <u>Circuit Judges</u>.

(Filed: November 18, 2015)
_____

OPINION[*]
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

    Inmate Shaun Austin filed a lawsuit under 42 U.S.C. § 1983 against Correctional

Officers Leon Hill and Jamie Brannon for failing to protect him during his incarceration,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

in violation of his constitutional rights. A jury returned a verdict in favor of the officers. Austin challenges two of the District Court's evidentiary rulings and seeks a new trial. We will affirm.

I.

We write solely for the parties' benefit and recite only the facts essential to our disposition. As shown at trial, Austin entered prison in July 2008 on charges including child rape (while Austin was HIV positive), possession of child pornography, and recklessly endangering another person. Due to the nature of his crimes, he was placed in the prison's protective custody unit — L-Tier.

In May 2009, Austin told Officer Brannon that another L-Tier inmate, Eugenio Torres, had been involved in a fight. According to Austin, after Torres found out that Austin snitched on him, Austin informed Officers Brannon and Hill that Austin feared for his safety. The next day, Torres attacked Austin with a razor blade.

Austin then brought this suit against the officers. After a trial, the jury returned a verdict in favor of the officers on Austin's claim for failure to protect.[1] Austin timely appealed, challenging two of the District Court's evidentiary rulings: (1) exclusion of an incident report regarding Torres's prior behavior towards a snitch, and (2) admission of Austin's sex crime charges.

---

[1] Claims against other defendants were disposed of prior to trial.

II.[2]

We review the District Court's evidentiary rulings for abuse of discretion. <u>United States v. Green</u>, 617 F.3d 233, 239 (3d Cir. 2010). An abuse of discretion occurs only where the decision is "arbitrary, fanciful, or clearly unreasonable — in short, where no reasonable person would adopt the district court's view." <u>Id.</u> (quotation marks omitted).

Austin's claim against the officers is for failure to protect, which requires that he show "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." <u>Bistrian v. Levi</u>, 696 F.3d 352, 367 (3d Cir. 2012). A plaintiff can prove an official's knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." <u>Id.</u> (quotation marks omitted).

A.

In the first ruling at issue, the District Court excluded an incident report, written by non-party Officer Robert Sikorsky, that described an attack Torres ordered on another inmate for snitching three months before Torres attacked Austin. The District Court held prior to trial that although the report was not hearsay (it was offered to show the officers' knowledge), it was not relevant unless Austin could show that the officers were aware of

---

[2] The District Court had jurisdiction under 18 U.S.C. §§ 1331, 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

it.[3] At trial, however, no direct evidence indicated as much. Neither Hill nor Brannon testified that they saw or heard about the report; in fact, Brannon denied knowledge of the report and of Torres's involvement in the earlier attack. Nor was there testimony from its author, Sikorsky, that he either showed Hill or Brannon the report or told them about it. Based on the lack of evidence that Hill and Brannon knew about the report, the District Court determined it was irrelevant.

Nonetheless, Austin submits that the following circumstantial evidence indicates that the officers were aware of the report. There are three, eight-hour officer shifts on L-Tier, one officer per shift. Each officer informs the officer relieving him of "significant events that have been going on" ("shift briefing"). Appendix ("App.") 459. Officer Brannon testified that information about an inmate ordering a hit on another inmate would be such a significant event to report to the relieving officer. During the time period of the incident report in question, Officer Hill "usually" worked the 2pm to 10pm shift, and Officer Sikorsky, the author of the report, worked the 6am to 2pm shift. App. 392-93. Thus, Sikorsky briefed Hill "every day at shift change" about "significant events that had happened," which Austin suggests would have included information about Torres's prior hit on a snitch. App. 393-94.

This chain of circumstantial inferences is tenuous at best. Austin presents no evidence confirming that Hall relieved Sikorsky on the day Sikorsky discovered this information about Torres. And, although it was Brannon's practice to brief other officers

---

[3] Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

on information about an inmate ordering a hit, that testimony does not necessarily lead to the conclusion that Sikorsky did the same. Additionally, Austin fails to provide any theory as to how Brannon learned about the report, given that he did not have the shift following Sikorsky's. With no direct evidence that the officers were aware of the report, and only speculation suggesting otherwise, we cannot conclude that the District Court's determination that that the report was irrelevant was "arbitrary, fanciful, or clearly unreasonable." Green, 617 F.3d at 239. Accordingly, the District Court did not abuse its discretion in excluding the incident report.

B.

In the second ruling at issue, the District Court held that the officers could introduce evidence of Austin's sex crime charges to support their theory that Austin's criminal history and his tendency to talk about it motivated Torres to attack Austin (a risk the officers could not have anticipated).

But, argues Austin, the only suggestion that Torres's attack was motivated by Austin's criminal history was a statement Torres made to Lieutenant Richard Botteri — which itself was wrongly admitted. The District Court allowed Lieutenant Botteri, who was present on L-Tier after the attack, to testify by deposition that Torres "spontaneously" told Botteri that Torres attacked Austin because of his sex crimes. App. 311. The confession came while Torres was in handcuffs after the attack on Austin and while Botteri was getting Torres "changed over" (presumably to another location). Id. The District Court ruled that the statement was admissible "because it was at the time of the attack." App. 288-89. Austin argues that Torres's statement to Lieutenant Botteri

5

does not fall within the "excited utterance" exception to the hearsay rule, <u>see</u> Fed. R. Evid. 803(2) ("statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused"), because there is a lack of evidence that Torres made the statement while excited from his attack on Austin. Under Austin's theory, Torres's statement is inadmissible, which therefore makes the sex crime charges irrelevant.[4]

We hold that, even if the District Court did err in admitting the statement, that error was harmless. <u>See</u> <u>McQueeney v. Wilmington Trust Co.</u>, 779 F.2d 916, 917 (3d Cir. 1985) (determining that an erroneous evidentiary ruling is harmless "if it is highly probable that the error[] did not affect the outcome of the case"). Other evidence made relevant the officers' theory that Torres was motivated by Austin's sex crime charges. For example, Officer Hill testified that inmates discussed Austin's charges and HIV-positive status, especially because his case was high profile and in the newspaper. Inmates shared newspaper clippings about Austin's charges. According to the testimony of Officer Hill and another inmate, Austin openly discussed his HIV-positive status and used it as a means to do what he wanted on L-Tier with impunity. That same inmate testified that this behavior "used to get under a lot of people's skin." App. 541. Thus,

---

[4] Austin additionally makes the separate argument that Torres's "precise motivations" for attacking him are altogether irrelevant. Austin Br. 27. That is incorrect. Torres's motivations are relevant to the extent they indicate whether or not the officers should have anticipated the attack. The officers cannot be liable unless they were deliberately indifferent to a risk that materialized and caused Austin harm. If Torres attacked Austin not because he snitched but because of the sexual nature of his crimes, and the officers were unaware that Torres posed a risk to Austin on that basis, then no deliberate indifference their part could have caused Austin harm.

regardless of whether Torres's statement to Lieutenant Botteri was admitted, this other evidence made Austin's sex crime charges relevant.  See Gerhart v. Henry Disston & Sons, Inc., 290 F.2d 778, 786 (3d Cir. 1961) ("[T]he improper admission of incompetent evidence which is merely cumulative on matters which are clearly shown by other admissible evidence is harmless error.").[5]

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[5] Austin's challenge to the District Court's Rule 403 analysis of the sex crime charges similarly lacks merit.  The District Court articulated a "rational explanation" of how the probative value of this evidence was not substantially outweighed even by what the District Court acknowledged was a high risk of prejudice.  United States v. Finley, 726 F.3d 483, 491 (3d Cir. 2013) (quotation marks omitted).  The District Court did not abuse its discretion.  Id.

7