NOT PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

No. 15-3585
_____

UNITED STATES OF AMERICA

v.

GERRETT CONOVER
a/k/a
PETER HANSEN
a/k/a
PETERSNEAKS
a/k/a
SNEAKSRCOOL
a/k/a
PLASTICNPVC

Gerrett Conover,
                    Appellant
_____

On Appeal from the District Court
for the District of New Jersey
(District Court No.: 1-13-cr-00516-001)
District Judge: Honorable Noel L. Hillman
_____

Submitted under Third Circuit LAR 34.1(a)
on September 22, 2016

Before: McKEE, Chief Judge*, HARDIMAN and RENDELL, Circuit Judge

(Opinion filed: December 12, 2016)

*Judge McKee was Chief Judge at the time this appeal was submitted.  Judge McKee completed his term as Chief Judge on September 30, 2016.

_____

O P I N I O N[*]

_____

**RENDELL**, Circuit Judge:

Defendant-Appellant Gerrett Conover pled guilty in the Northern District of New York to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and was sentenced to 97 months' imprisonment. Conover also pled guilty in the District of New Jersey to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and was sentenced by that court to 240 months' imprisonment. Conover appeals the sentence entered by the District of New Jersey on the basis that his convictions for distribution and possession of child pornography violate his rights under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Conover also challenges his sentence as procedurally and substantively unreasonable. For the reasons stated below, we will affirm.[1]

## I. Background

On September 16, 2012, Conover was detained in Ogdensburg, New York while attempting to re-enter the United States after a car trip to Canada. Homeland Security

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

2

Investigations ("HSI") agents had been investigating Conover in connection with a larger child exploitation investigation. When Conover attempted to re-enter the United States, a record check conducted by Customs and Border Patrol ("CBP") revealed a notice detailing Conover's suspected possession of child pornography. CBP officers searched Conover's car and discovered a laptop. A cursory search of the laptop at the border revealed a single video depicting child pornography, which Conover freely admitted to having on the computer.[2] He was charged by criminal complaint and arrested. Conover was indicted on September 26, 2012 in the Northern District of New York on one count of possession of child pornography.

While Conover was being detained in New York, HSI agents executed a federal search warrant on Conover's home in Swedesboro, New Jersey. During the search, agents seized videos, photos, and computer equipment which contained depictions of child pornography. Further investigation uncovered that Conover had also been engaging in online communications with minors. On August 7, 2013, a federal grand jury in the District of New Jersey returned a thirteen-count indictment against Conover. On November 25, 2013, Conover executed a written plea agreement in the New Jersey case.[3] He agreed to plead guilty to Count Three of the indictment, which charged the

---

[2] A full forensic analysis of the laptop revealed an additional 60 still images of child pornography.
[3] The plea agreement contained an appellate waiver which limited Conover's right to appeal a sentence resulting from a total Guidelines offense level of 33. This waiver is not implicated in this appeal because Conover was sentenced according to a total offense level of 42.

distribution of three videos containing child pornography.[4]  Notably, the video contained on the laptop seized in New York was not listed among the three videos charged in Count Three.

On March 24, 2014, Conover pled guilty in the Northern District of New York to the sole count of possession of child pornography and was sentenced in that district before he was sentenced in the District of New Jersey.  The Court adopted the Guidelines recommendation contained in the presentence report ("NDNY PSR"), which was calculated based primarily upon the images and video possessed by the defendant in New York.  However, there was a five level pattern of activity enhancement for Conover's prior sexual abuse and exploitation of minors.[5]  This enhancement was based on activity uncovered in connection with the New Jersey investigation and outlined in Counts One and Two of the New Jersey indictment.  No further enhancements, other than those based upon the images themselves, were included in the NDNY PSR.  The Court imposed a sentence of 97 months' imprisonment, the bottom of the Guidelines range.[6]

Conover was sentenced in the District of New Jersey on October 8, 2015.  The presentence report for the New Jersey case ("DNJ PSR") did not assign points for the conviction in New York because the New York offense conduct did not occur prior to the

_____

[4] The remaining twelve counts of the New Jersey indictment were dismissed by the government.
[5] Under the Guidelines enhancement applicable to this conduct, U.S.S.G. § 2G2.2(b)(5), "pattern of activity" means "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant," whether or not these instances occurred during the course of the offense, involved the same minor, or resulted in a conviction for such conduct. U.S.S.G. § 2G2.2 cmt. 1.
[6] Conover filed a notice of appeal for the New York case but later withdrew that appeal.

4

New Jersey offense conduct. Moreover, the DNJ PSR did not utilize any of the materials found on the laptop in the New York case when calculating the Guidelines range. However, the DNJ PSR did provide a five point pattern of activity enhancement based on the same incidents of sexual abuse and exploitation underlying that same enhancement in the NDNY PSR. At the sentencing hearing, Conover abandoned his prior objections to the Guidelines calculation in the DNJ PSR and conceded that it was correct. The Court therefore accepted the Guidelines calculation as set forth in the DNJ PSR.

In arguing for a variance, Conover presented expert testimony from his treating psychologist, Dr. Steven Eric Samuel. Dr. Samuel testified that Conover would more appropriately be diagnosed as a paraphilic, not a pedophile, and that, due to a variety of factors, he presented a low risk of recidivism. Conover's brother and his best friend also addressed the Court, asking for leniency. Finally, Conover himself testified, stating remorse for his crimes and describing the progress he had made in therapy.

The New Jersey District Court sentenced Conover to the statutory maximum of twenty years' imprisonment, to run concurrently with the New York sentence. The Court, explaining the sentence at length, assessed both Conover's variance requests and the applicable sentencing guidelines. The Court first discounted Dr. Samuel's testimony as it underemphasized Conover's long-standing interest in underage children, which he acted on in a number of different ways. The Court did, however, find the testimony of Conover's brother and friend to be helpful in sentencing and accepted Dr. Samuel's recommendation of the prison facility most appropriate for Conover. Finally, the Court acknowledged that the conduct serving as the basis for the pattern of activity

5

enhancement had already been a part of the sentence in New York. Because it determined that Conover's conduct in New York was relevant conduct to the New Jersey offense, the Court looked to U.S.S.G. § 5G1.3(b) to determine the most appropriate sentence. The Court determined that any "double counting" of relevant conduct was avoided and due process was satisfied by having the sentences run concurrently. (App. Vol. II, 92–93).

## II. Discussion

Conover raises double jeopardy concerns over his sentencing in two primary respects. First, he argues that the separate sentences from New York and New Jersey violated his double jeopardy protections because possession of child pornography is a lesser-included offense in the offense of distribution of child pornography. Second, Conover argues that double jeopardy is violated by the imposition of a sentence in the District of New Jersey that accounted for conduct that had already been considered in the sentencing for the Northern District of New York offense. Finally, Conover argues that his New Jersey sentence is procedurally and substantively unreasonable.

### A. Double Jeopardy Claims

The government asserts that Conover waived his double jeopardy claims by entering guilty pleas to two distinct crimes in two separate jurisdictions. A defendant who pleads guilty to a criminal charge may only later assert violation of the double jeopardy clause if the violation is apparent from the record or the indictment. *United States v. Pollen*, 978 F.2d 78, 84 (3d Cir. 1992); *see also United States v. Broce*, 488 U.S. 563, 575 (1989). Conover does not specifically address this argument, but does concede

6

that he failed to raise his double jeopardy claims in the district court, and as such this Court is bound to review solely for plain error. *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008). In order to prevail on plain error review, Conover must show that the entry of separate convictions constituted an (1) error, (2) that is plain, (3) that affected substantial rights, and that (4) seriously affected the "the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 70. Because we do not find any plain error and would thus affirm the ruling of the District Court regardless of whether the challenge has been waived by guilty plea, we assume without deciding that there has been no waiver.

The double jeopardy clause of the Fifth Amendment establishes that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In order to violate the double jeopardy clause, the charged offenses must be the same in law and in fact. *United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013). We have held that there is a double jeopardy violation where an individual is convicted for both receipt and possession of child pornography when the same pornographic materials serve as the basis of both offenses. *Miller*, 527 F.3d at 70–72; *cf. Finley*, 726 F.3d at 495–96 (finding no double jeopardy violation when the two offenses were not the same in fact because the defendant received images that he did not already possess and distributed different images than that which he did already possess).

Conover argues that the same conduct served as the basis for the possession conviction in New York and the distribution conviction in New Jersey. We disagree. It is clear from the record that the illegal conduct that served as the basis for the New Jersey and New York convictions was distinct in each instance. The relevant conduct occurred

7

on two separate dates and in two separate states. The sole count of the New York indictment identified the material which contained the child pornography, specifically, the laptop seized in New York that contained digital images and a digital video. Moreover, the affidavit attached to the New York criminal complaint specifically identified this video by name. Count Three of the New Jersey indictment—the only count to which Conover pled and was convicted—specified three videos, none of which were identical to the video involved in the New York case.

Thus, any analogy Conover makes of his situation to that presented in *Miller* is misplaced. The defendant in *Miller* was convicted for both receipt and possession of the same images of child pornography. *Miller*, 527 F.3d at 59. Conover's New Jersey and New York convictions were not based upon overlapping depictions of child pornography. Conover's case is therefore more analogous to *Finley*, where we found that separate convictions for receipt and distribution of child pornography did not violate double jeopardy when different images served as the basis for the separate convictions. *Finley*, 726 F.3d at 496. Here, as in *Finley*, the depictions of child pornography underlying Conover's separate convictions are distinct and therefore the offenses are not the same.

It is true that the NDNY PSR considered conduct related to the New Jersey case in adding a five level enhancement for pattern of activity, and this same conduct provided the basis for the same enhancement in the DNJ PSR. However, the Supreme Court has established that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for that relevant conduct." *United States v. Gibbs*, 190 F.3d 188, 215 (3d Cir. 1999) (citing *Witte v. United States*, 515 U.S. 389, 395

8

(1995)).  Further, it is entirely irrelevant whether the enhancement occurred in the first proceeding or the second.  *Witte*, 515 U.S. at 399.  The District Court determined that the offense in New York was relevant conduct, in part due to the enhancements for the pattern of activity conduct in both PSRs, and thus imposed a concurrent, rather than consecutive, sentence.  This decision was well within the Court's discretion; the decision to do so does not, and cannot, support Conover's assertion that the District Court thereby "recognized there was a double jeopardy problem."  (Appellant Br. 19).

In sum, because the two convictions were not based upon the same underlying conduct, and because the consideration of relevant conduct in determining the punishment for a charged offense does not punish the offender for that relevant conduct, Conover's double jeopardy rights were not violated.[7]

## B.  Reasonableness of Sentence

Conover contends that his twenty-year sentence in the New Jersey case was both procedurally and substantively unreasonable.  We disagree.

### 1.  Conover has not demonstrated that his sentence is procedurally unreasonable.

Conover argues that by discounting Dr. Samuel's testimony that he posed a low risk of recidivism, the District Court failed to appropriately evaluate the necessity of the sentence imposed "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C).

---

[7] Because we have determined that the offenses were not the same in fact, we do not reach Conover's arguments that the offenses were the same in law or that he was successively prosecuted by the government.

9

We review sentencing rulings under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). This review proceeds in two stages. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). First, we review for procedural error, "ensuring that the district court: (1) correctly calculated the defendant's advisory Guidelines range; (2) appropriately considered any motions for a departure under the Guidelines; and (3) gave meaningful consideration to the sentencing factors set forth in 18 U.S.C. § 3553(a)." *United States v. Freeman*, 763 F.3d 322, 335 (3d Cir. 2014), *cert. denied sub nom. Mark v. United States*, 135 S. Ct. 1189 (2015), and *cert. denied*, 135 S. Ct. 1467 (2015). The district court does not need to discuss every factor contained in § 3553(a) as long as the record makes clear that the factors were taken into account at sentencing. *United States v. Olhovsky*, 562 F.3d 530, 547 (3d Cir. 2009). If the district court's sentence was procedurally firm, we will then consider its substantive reasonableness. *See id.* at 550 n.18.

It is clear from the record that the District Court of New Jersey gave meaningful consideration to the § 3553(a) factors and to Dr. Samuel's testimony. The Court did not discount Dr. Samuel's testimony merely because he did not diagnose Conover as a pedophile. Instead, the Court gave ample consideration to his opinions and found them to be unsupported by the facts. Particularly, the Court emphasized the quantity of factors that could suggest a high risk of recidivism. These included Conover's long-standing interest in child pornography, the escalation of his conduct, and his lack of self-motivated interest in treatment prior to his arrest.

10

During his testimony, Dr. Samuel opined that Conover did not fit the typical diagnosis of pedophile because much of his online conduct was fueled by his alcoholism and his desire to garner attention. However, the Court noted that Dr. Samuel admitted that much of Conover's conduct occurred when alcohol would not have been an issue. The Court was particularly disturbed by Dr. Samuel's disregard of the evidence that Conover was "actively grooming" a young boy online within the last few years. (App. Vol. II, 90). Finally, the Court did not discount Dr. Samuel's testimony in its entirety; indeed, it recommended that Conover be imprisoned at the Butner Federal Medical Center so that he could receive continued mental health treatment, as suggested by Dr. Samuel.

The record plainly demonstrates that the District Court gave "meaningful consideration" to Dr. Samuel's opinion and did not, as Conover contends, discount it merely due to a disagreement with the doctor's diagnosis. Thus, Conover has not demonstrated that his sentence was procedurally unreasonable.

### 2. Conover has not demonstrated that his sentence is substantively unreasonable.

Finally, Conover argues that his twenty-year sentence—the statutory maximum for the offense committed—was substantively unreasonable because the Guidelines provided for an excessive punishment, especially in light of the actual conduct to which he pled. Specifically, Conover argues, based in part on *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010), that U.S.S.G. § 2G2.2 provides for an excessive sentence as applied.

11

We will find a sentence to be substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568. The issue is not whether we would have imposed the same sentence, but rather "whether the sentence is reasonable in light of this record and the sentencing factors." *Olhovsky*, 562 F.3d at 550.

We cannot say that Conover's twenty-year sentence was unreasonable. The District Court made note of its careful review of sentencing submissions, which included the DNJ PSR, Conover's sentencing memorandum, his motion for downward variance, and various documents critical of § 2G2.2, including the *Grober* decision. However, *Grober* does not hold that § 2G2.2 will always result in an unreasonable sentence; indeed, a court is not obligated to vary its sentence on this basis if it does not have a policy disagreement with that section. *Grober*, 624 F.3d at 609. Here, the Court carefully considered the supportive testimony of Conover's friends and family. It also considered, though discounted for the reasons we have just summarized, the testimony of Conover's psychologist.

Ultimately, the District Court was troubled by a variety of factors in the case, including Conover's lack of truthfulness and remorse. The Court noted that Conover "placed himself in positions of trust" as a Boy Scout leader and has had a "longstanding, deep, depraved interest in young, young boys and has acted out on that in a number of different ways." (App. Vol. II, 91). The Court further demonstrated its careful consideration of the specific circumstances of Conover's case by providing that Conover's sentence run concurrently with his New York sentence in order to best

comport with "overall due process and fairness." (App. Vol. II, 93). In light of a record demonstrating the District Court's careful and thoughtful consideration of the evidence in this case and the applicable Guidelines, we cannot say that the twenty-year sentence it imposed was unreasonable.

### III. Conclusion

For the foregoing reasons, we will affirm Conover's conviction and sentence.