**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2028
_____

UNITED STATES OF AMERICA

v.

JOSEPH SENTORE COLEMAN, JR.,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 4-17-cr-00249-001)
District Judge: Hon. Matthew W. Brann
_____

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
February 6, 2020
_____

Before: SHWARTZ, SCIRICA, and COWEN, <u>Circuit Judges</u>.

(Filed: February 7, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Joseph Coleman was convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Coleman appeals, arguing the District Court erred in admitting a recording that was inadmissible under Federal Rule of Evidence 404(b). Because the evidence was properly admitted, we will affirm.

I

Law enforcement received information from a confidential informant ("CI") that Coleman sold firearms. The CI agreed to contact Coleman to purchase a gun. The CI arranged the purchase with Coleman via text message. In one message, Coleman told the CI that he had "a few joints," meaning firearms, for sale. App. 44. The pair corresponded about the types of firearms and their prices, and they agreed to meet.

Before the meeting, law enforcement searched the CI to ensure he did not possess any contraband or firearms. The CI was then "outfitted with a recording device," and he drove to meet Coleman. App. 55. Their entire meeting was recorded.

During the meeting, the CI and Coleman discussed several firearms that Coleman could provide to the CI. The CI then purchased a 9-millimeter firearm from Coleman for $400. After the purchase, the CI placed the gun in the trunk of his car and drove Coleman to a nearby convenience store to buy cigarettes. During the car ride, Coleman described other guns he sold, as well as those he had in his possession. Coleman also described various sexual encounters, spoke about women in a degrading manner, and talked about territorial conflicts he had with others in the area. After their meeting, the

2

CI met the investigators, who retrieved the firearm from the trunk of the car. They also searched the CI once more, again finding no contraband.

A grand jury returned a one-count indictment, charging Coleman with possession of a firearm by a convicted felon. Coleman filed a motion in limine to exclude the portion of the recorded conversation that transpired after the sale of the firearm because it captured a discussion between Coleman and the CI about firearms sales and other activities not included in the indictment. He argued that these discussions were irrelevant under Rule 401, prejudicial under Rule 403, and inadmissible under Rule 404(b). The District Court ruled in limine that the Government could play the recording for the jury up until the CI placed the gun in the trunk of the car, but not the remainder of the recording because it contained prohibited "other acts" evidence under Rule 404(b) and was unfairly prejudicial.

The Government played the limited recording at trial during the testimony of both the officer handling the investigation and the CI. On cross-examination, Coleman challenged the CI's credibility and asserted that the CI possessed the gun before meeting with Coleman and lied about purchasing it from him. In short, Coleman sought to insinuate that the CI had planted the gun on Coleman.

When the CI's testimony was complete, the Government asked the District Court to reconsider its ruling precluding evidence of Coleman's statements about other firearms he sold and had available for purchase. The Government asserted that, in light of Coleman's apparent defense that the CI had fabricated the gun sale, the remainder of the recording was admissible to show Coleman's intent to sell weapons, his motive for

3

meeting with the CI, and his general practice of selling firearms. Coleman confirmed his theory of the case was that the CI "brought the gun" with him to meet Coleman "or [that] one was handed to him" by law enforcement on the way to the meeting, but argued that this theory did not "open the door" to the previously precluded portion of the recording. App. 176.

The District Court determined that it would "modify or change [its pretrial] ruling" and "permit the Government to play the balance of the tape." App. 177. The Court explained "that the probative value of the . . . tape now substantially outweigh[ed] any danger of unfair prejudice against [Coleman]." App. 177. The Court reasoned that it would be "appropriate now . . . to play the balance of the tape" to "dispel" Coleman's argument that the CI "brought the firearm to the transaction." App. 174.

The Government called the officer handling the investigation back to the witness stand and played the remainder of the recording for the jury. During questioning, the officer noted Coleman's references in the recording to having "guns galore." App. 187; Govt. Ex. 5. This portion of the recording also included Coleman's statements about conflicts he had with others in the community and comments about his relationships with women, but no questions were asked about these topics.

After the close of evidence, the District Court told the jury that it could consider these portions of the recording "only to decide whether Mr. Coleman had the state of mind, knowledge, or intent necessary to commit the crime charged in the indictment, or whether Mr. Coleman had the motive or opportunity to commit the acts charged in the indictment," and "not [to] consider it for any other purpose." Trial Transcript Vol. III,

4

ECF No. 78 at 37. The Court further admonished the jury that it should "not consider any discussion of drugs, interactions with other individuals or possession of other firearms as a substitute for proof that [Coleman] committed the crime charged, or that he has a bad character or any propensity to commit crimes" and should "not . . . conclude that because [Coleman] may have committed other bad acts or crimes that he must have committed the crime charged in the indictment." Trial Transcript Vol. III, ECF No. 78 at 37.

The jury found Coleman guilty and the District Court sentenced him to 120 months' imprisonment. Coleman appeals.

II[1]

The District Court correctly admitted the objected-to portion of Coleman's conversation with the CI under Rule 404(b). The evidence was offered for a non-propensity purpose, was relevant, and its probative value outweighed the danger of unfair prejudice.

Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "Other act"

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review a district court's evidentiary rulings for an abuse of discretion," United States v. Caldwell, 760 F.3d 267, 274 (3d Cir. 2014); Marra v. Phila. Hous. Auth., 497 F.3d 286, 297 (3d Cir. 2007), but we exercise "plenary review of whether evidence falls within the scope of Rule 404(b)." United States v. Green, 617 F.3d 233, 239 (3d Cir. 2010) (internal quotation marks and citation omitted).

evidence, however, is admissible when offered for a proper purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). If the other act evidence: (1) is "proffered for a non-propensity purpose;" (2) is "relevant to the non-propensity purpose;" (3) has probative value that outweighs "its potential for causing unfair prejudice to the defendant;" and (4) is "accompanied by a limiting instruction," United States v. Foster, 891 F.3d 93, 107 (3d Cir. 2018) (quoting United States v. Repak, 852 F.3d 230, 241 (3d Cir. 2017)), then it is admissible. The objected-to portion of the recording satisfies these four elements.

First, Coleman's statements were admissible for a non-propensity purpose because they showed proof of plan, motive, and access, and refuted a claim that the gun was planted. See Foster, 891 F.3d at 108. Coleman was charged with possession of the 9-millimeter firearm that he sold to the CI. The recording demonstrated that Coleman had regular access to various firearms and sold them for profit, which corroborated Coleman's motive for meeting the CI. The recording also undercut the assertion that the CI was the source of the gun. See United States v. Lee, 612 F.3d 170, 187 n.19 (3d Cir. 2010) (explaining, in a felon-in-possession case, that "it is highly relevant to show that a defendant had a motivation to commit the crime for which he is being charged"). Thus, the recording had an evidentiary purpose that did not bear upon Coleman's character or his propensity to possess or sell firearms.

Second, the recording was relevant. Evidence is relevant if there is "a relationship between the evidence and a material fact at issue[,] which must be demonstrated by

reasonable inferences that make a material fact more probable or less probable than it would be without the evidence." Foster, 891 F.3d at 109 (quoting United States v. Sampson, 980 F.2d 883, 888 (3d Cir. 1992)). The suggestion that the CI planted the gun made relevant the evidence that Coleman had access to weapons. More specifically, discussions about other firearms Coleman sold and had available made more probable that Coleman provided the 9-millimeter firearm to the CI, and made less probable that the CI planted the gun, which was the backbone of Coleman's defense. Therefore, the recording was relevant to show motive, access, and intent to possess, and to rebut Coleman's defense. Id. at 110 ("[T]he [G]overnment was entitled to rebut" the argument that a gun was planted "by presenting evidence of his motive for possessing a gun that day.").

Third, the probative value of the evidence outweighed the risk of unfair prejudice, and thus "meet[s] Rule 403's balancing test." Id. at 109. Rule 403 requires balancing the probative value of evidence offered against the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. We give substantial deference to district courts in evaluating evidence under Rule 403. See, e.g., Foster, 891 F.3d at 110; United States v. Finley, 726 F.3d 483, 491 (3d Cir. 2013); Lee, 612 F.3d at 190. Coleman's accusation that the CI, rather than Coleman, possessed the gun, made evidence that revealed Coleman's motive to possess and his access to guns "highly probative." Lee, 612 F.3d at 190 (concluding that evidence "reveal[ing] [the defendant's] motive to possess weapons on the day in question, . . . is highly probative in a case like this, in which the defendant has denied possession all together."). Though the recording

7

was prejudicial, as it evidenced Coleman's practice of selling firearms and engaging in activities some may view unfavorably, the prejudice was not unfair.[2] Coleman's defense placed at issue whether the CI planted the gun. The objected-to portion of the recording refuted that assertion, making this evidence of past sales highly probative and tipping the balance in favor of admissibility under Rule 403.

Finally, the District Court provided the jury with a limiting instruction, which mitigated the danger of unfair prejudice to Coleman. The Court told the jury that it should only consider the recording "to decide whether Mr. Coleman had the state of mind, knowledge, or intent necessary to commit the crime charged in the indictment, or whether Mr. Coleman had the motive or opportunity to commit the acts charged in the indictment" and not to "consider it for any other purpose." Trial Transcript Vol. III, ECF No. 78 at 37. The Court further admonished the jury that it should "not consider any discussion of drugs, interactions with other individuals or possession of other firearms as a substitute for proof that [Coleman] committed the crime charged, or that he has a bad character or any propensity to commit crimes" and should "not . . . conclude that because [Coleman] may have committed other bad acts or crimes that he must have committed the crime charged in the indictment." Trial Transcript Vol. III, ECF No. 78 at 37. By narrowing the purpose for which the jury could consider the evidence, and because we presume jurors follow the Court's instructions, Richardson v. Marsh, 481 U.S. 200, 211

---

[2] While Coleman's statements about women and his territorial conflicts with others were unfavorable, they were relatively short and not unfairly prejudicial. Further, the Government did not question the witness on these subjects or mention them during closing arguments.

(1987), the clear and specific limiting instruction minimized any unfair prejudice from the recording.

III

Because the evidence was admissible under Rule 404(b), we will affirm.