**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3033
_____

UNITED STATES OF AMERICA,
Appellant

v.

RODERICK T. LONG


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-21-cr-00087-001)
District Judge: Honorable J. Nicholas Ranjan
_____

Argued on November 28, 2023

Before: HARDIMAN, FREEMAN, and MONTGOMERY-
REEVES, *Circuit Judges*.

(Filed: February 8, 2024)

Troy Rivetti
Donovan J. Cocas [**Argued**]

Laura S. Irwin
Matthew S. McHale
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

    *Counsel for Appellant*

Kelvin L. Morris [**Argued**]
Law Office of Kelvin L. Morris
310 Grant Street
Suite 707
Pittsburgh, PA 15219

    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

**HARDIMAN**, *Circuit Judge*.

In *United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012), we held that the district court abused its discretion when it *admitted* evidence in a criminal case over defense counsel's objection without examining it. This appeal presents the inverse question: did the District Court abuse its discretion by *excluding* evidence offered by the Government without

examining it? We hold that it did, so we will vacate and remand.

I

A

In 2006, Roderick Long pleaded guilty to receiving material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(2). He was sentenced to 121 months' imprisonment followed by a lifetime of supervised release with conditions limiting his access to computers and certain sexually explicit materials. *United States v. Long*, 304 F. App'x 982, 983–84 (3d Cir. 2008).

In 2020, seven years after Long's release from prison, Pennsylvania state law enforcement received a tip from Microsoft through the National Center for Missing and Exploited Children that someone had uploaded child pornography[1] using Skype.[2] Law enforcement determined that the upload came from Long's residence in Clinton, Pennsylvania. After obtaining and executing a search warrant,

---

[1] As the Government points out, "child sexual abuse material" or CSAM is a more accurate label than "child pornography" because the material inherently documents child exploitation and sexual abuse. Gov't Br. 3 n.2. Though "child pornography" is a misnomer, we use that terminology because it is used in federal statutes. *See, e.g.*, 18 U.S.C. § 2252A.

[2] Throughout this opinion, we refer to the allegations giving rise to the indictment and the evidence the Government may present at trial—not proven facts.

law enforcement found more than 500 videos and more than 60 photos of child pornography on Long's electronic devices and cloud storage account. The child pornography included videos and images of infants and toddlers.

Long was indicted for knowingly possessing child pornography involving victims under 12 years old, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). This crime contains four elements: (1) Long knowingly possessed visual depictions of minors engaging in sexually explicit conduct; (2) the visual depictions were mailed, transported, or shipped in interstate commerce or were produced using materials which had been mailed, transported, or shipped in interstate commerce; (3) production of the visual depictions involved minors engaging in sexually explicit conduct, which includes lascivious exhibition of the genitals; and (4) the visual depictions involved at least one minor who was prepubescent or under 12 years old. 18 U.S.C. § 2252(a)(4)(B), (b)(2); *id.* § 2256.

B

As Long's trial approached, the Government provided notice that it sought to introduce one video montage (proposed Exhibit 30) and four photos (proposed Exhibits 31–34) at trial as samples of the content allegedly found on Long's electronic devices. The video is 1 minute and 25 seconds long and is "a montage of four clips of longer videos," totaling 32 minutes and 24 seconds. *United States v. Long*, 2022 WL 15523192, at *1 (W.D. Pa. Oct. 26, 2022). The four photos depict naked girls displaying their genitals in suggestive ways, but the photos do not show any sexual acts. The Government asserted that other images seized from Long's devices are more sexually graphic than those included in its proffer.

4

According to the Government, the exhibits show both that Long had materials involving minors engaging in sexually explicit conduct and that Long knew the materials contained such content. Long objected to the exhibits, arguing that they would be "highly improper and prejudicial" because "the capacity of the evidence[] to inspire emotions far outweighs the probative value." App. 185. Instead, Long offered to stipulate[3] that "the images are of child pornography and depict a 'lascivious exhibition of the genitals'" and proposed that the Government could rely on "[a] joint written description of the photos . . . in lieu of the actual photos and video montage." App. 185–86. The Government has consistently objected to the written descriptions and the stipulation as insufficient, arguing that they don't prove that Long "knowingly possesse[d]" child pornography, as required by 18 U.S.C. § 2252(a)(4)(B).

Following Long's offer to stipulate and his argument that the Government could use written descriptions in place of visual evidence, the District Court ordered the parties to

> confer and file a joint report including a written description of the images the government would show at trial. The report must include either an agreed-to written description, or else the parties' separate competing descriptions—if they cannot agree. This is without prejudice to the government arguing that the images themselves must be shown. Following receipt of the report,

---

[3] The Government did not agree to the stipulation, but we treat offers to stipulate and actual stipulations interchangeably in this context. *See United States v. Finley*, 726 F.3d 483, 492 (3d Cir. 2013).

the Court will conduct an appropriate Rule 403 analysis and rule on the objection.

App. 4.

In response to the District Court's order, the parties submitted joint descriptions of the four photos but did not include a description of the video montage. Instead, they described only the four longer videos from which the montage was compiled. In its appellate brief, the Government now describes the montage's content. The Government asserts that the montage contains a variety of explicit sexual acts between children and adults but omits the more grotesque and inflammatory materials included in the source videos.

C

After reviewing the joint descriptions, the District Court excluded all five proposed exhibits while allowing the Government to re-offer the exhibits at trial should Long "contradict or undermine the stipulations" or if "the trial evidence reflects a need by the [G]overnment to introduce the proposed exhibits in light of how other evidence comes in." *Long*, 2022 WL 15523192, at *4. The District Court noted that it "intentionally" did not view the proposed exhibits, relying solely on the written descriptions. *Id.* at *2. The Court reasoned that, under *Cunningham*, it had to view the proposed exhibits only prior to admitting them, but not prior to excluding them. *See id.*

According to the District Court, the Government sought to introduce the exhibits to "aid the jury in determining whether the video clip montage and images . . . depict sexually explicit conduct," as defined by 18 U.S.C. § 2256. *Id.* at *3

6

(internal quotation marks omitted). The Court found that while the proposed exhibits had "some probative value," it was "lessened considerably by the stipulations of the parties." *Id.* Additionally, because Long agreed to let the Government read the "detailed written descriptions" into evidence, the Court reasoned that "the video and images themselves would add little additional probative value—unlike, say, if the young age of the victims were in dispute or were not immediately apparent." *Id.* As for the probative value concerning knowledge, the District Court concluded that "there would be no real need to show the exhibits over providing a detailed description of them to the jury." *Id.* at *3 n.1.

The District Court excluded the exhibits under Rule 403 for four reasons. First, it found that the exhibits "are graphic and are likely to provoke a visceral and emotional reaction for the jurors, and thus pose at least a risk of unfair prejudice." *Id.* at *3. Second, it concluded that the exhibits "would be cumulative" as they merely serve to "corroborate . . . other [expected] evidence and testimony that is not even in dispute" such as the written descriptions, testimony from law enforcement officers describing what they found, and screenshots showing image filenames. *Id.* at *4. Third, it reasoned that "the proposed exhibits would waste time both in jury selection and during the trial itself, as the Court would need to issue cautionary instructions and expects that many prospective jurors would need to be stricken . . . due to an unwillingness to look at the video and images." *Id.* Fourth, it found that the exhibits "may also potentially cause some jury confusion" because "the Court will likely instruct the jury that even though the proposed exhibits are being shown, certain elements of the offense . . . can be accepted as being met, in light of the stipulations." *Id.*

7

The Government filed a timely interlocutory appeal. *See* 18 U.S.C. § 3731. The Government makes two closely related arguments. First, it argues that the Court erred procedurally by failing to view the exhibits before ruling on their admissibility. Second, it argues that the Court erred substantively by preventing the Government from showing any child pornography exhibits.

II

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3731 over the Government's interlocutory appeal of the District Court's order excluding evidence that the Government certified "is a substantial proof of a fact material in the proceeding," *id.*, even though the District Court "suggest[ed] that [its] ruling [was] preliminary and could change." *United States v. Bergrin*, 682 F.3d 261, 277 (3d Cir. 2012) (cleaned up). We review the District Court's decisions under Rule 403 for abuse of discretion. *See United States v. Heatherly*, 985 F.3d 254, 265 (3d Cir. 2021). If we find that the District Court abused its discretion in its procedural application of Rule 403, then the Court is not entitled to deference on its substantive admissibility determination. *See Heatherly*, 985 F.3d at 267.

III

We have held that, "generally, a district court should personally examine challenged evidence before deciding to admit it under Rule 403." *Cunningham*, 694 F.3d at 386. But in dicta[4] we surmised that a district court might not need to

---

[4] The issue before us in *Cunningham* was improper procedure when *admitting* evidence, so our discussion of procedure when

view evidence before excluding it if the court has a "sufficiently detailed description" of the evidence and "it is obvious to the court that the probative value of the evidence is so minimal that it is substantially outweighed by the danger of unfair prejudice." *Id.* at 387 (citation omitted). Yet we also cautioned that this discretion should "not be seen as an invitation to freely deny the admission of evidence that no one of ordinary sensibilities would want to review." *Id.* We explained further that a court's failure to view evidence when required constitutes a procedural error. *See id.* at 392. But we did not identify the threshold at which it is "obvious" that unfair prejudice substantially outweighs probative value such that a court may decline to view the evidence. *See id.* Nor must we establish that precise threshold here; it suffices to hold that, on the facts of this case, it was not "obvious" that the evidence was inadmissible under Rule 403.

The District Court had detailed descriptions of the photos and the videos the montage was compiled from, but not a description of the montage itself. After assessing the exhibits' probative value and risk of unfair prejudice, the Court excluded the exhibits without viewing them, finding that it was "obvious" from the written descriptions that the risk of unfair prejudice substantially outweighed the probative value. *Long*, 2022 WL 15523192, at \*2 (cleaned up); *see id.* at \*3–4. On this record, the District Court committed procedural error.

---

*excluding* evidence was dicta. *See United States v. Mallory*, 765 F.3d 373, 381 (3d Cir. 2014) ("We have defined dictum as a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding.") (cleaned up).

A

1

We assess the probative value of evidence in relation to evidentiary alternatives. *See United States v. Bailey*, 840 F.3d 99, 122 (3d Cir. 2016). In effect, the availability of "alternate, less prejudicial ways of presenting" similar information reduces the probative value of the contested evidence. *Id.* The written descriptions ordered by the District Court are evidentiary alternatives to the exhibits, but they are imperfect substitutes because photos and videos "convey a pictorial accuracy and detail that words cannot duplicate [and] that advocates can[not] spin." *United States v. Savage*, 970 F.3d 217, 305 (3d Cir. 2020). The need for Long's jury to view the exhibits for itself is especially relevant in this case because the content of the images is an element of the charged crime. *See* 18 U.S.C. § 2252.

There is also the contested question of whether Long knew the photos and videos included minors. The Government contends that the visual exhibits are more useful to a jury on this question than the written descriptions. For example, the parties describe one image with the filename "th-41.jpg" as depicting "a prepubescent female on her hands and knees on a bed wearing only a shirt with her vagina and anus exposed." App. 195. The defense could argue that the "prepubescent" description does not establish beyond a reasonable doubt that Long knew the girl was a minor simply from viewing the photo. Instead, the defense might argue that Long mistakenly thought the girl was a petite adult with youthful features who was dressed to look younger. The written description leaves jurors to speculate about what may or may not be discernable

10

from the photo as they decide a contested element of the offense. But if jurors were to view the actual photo, their determination of the victim's age would be based on the visual evidence itself, not a description of it. So the District Court would need to view the actual photo to assess whether its probative value is substantially outweighed by any contrary considerations.

Despite the lower evidentiary value of the written descriptions, the District Court rejected the Government's argument that it can choose what evidence it uses to prove its case under *Old Chief v. United States*, 519 U.S. 172 (1997). *Long*, 2022 WL 15523192, at *4 n.2. The Court found *Old Chief* distinguishable for three reasons: (1) it involved "much less inflammatory evidence" than child pornography; (2) it primarily addressed concerns about the prosecution's narrative integrity that are not present here; and (3) its discussion of prosecutorial narrative—which the Government relied on— was dicta. *Id.* But we have previously relied on *Old Chief* in child pornography cases for the proposition that the Government typically can choose what evidence it uses to prove its case. *See, e.g.*, *Heatherly*, 985 F.3d at 269. So the District Court's attempt to limit the application of *Old Chief* conflicts with our prior interpretations of that case.

2

It's true that probative value decreases if the evidence is only probative of elements to which the defendant has stipulated. *Cf. United States v. Herman*, 589 F.2d 1191, 1198 (3d Cir. 1978) (noting that "the extent to which [the] proposition [that the evidence proves] [i]s directly at issue in the case" influences the evidence's probative value) (cleaned up). But even though stipulations can reduce the probative

11

value of exhibits, a "criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief*, 519 U.S. at 186–87. Simply put, a defendant cannot strategically use stipulations to "dictate to the [G]overnment how to prove its case." *Cunningham*, 694 F.3d at 389 (citing *Old Chief*, 519 U.S. at 183 n.7). "Indeed, courts are in near-uniform agreement that the admission of child pornography images or videos is appropriate, even where the defendant has stipulated, or offered to stipulate, that those images or videos contained child pornography." *Id.* at 391 (collecting cases from six other circuits).

This is in part because evidence can be probative of multiple elements. *See Old Chief*, 519 U.S. at 187. For example, an exhibit in a child pornography case can simultaneously provide evidence of pornographic content and evidence that the defendant knew the material contained child pornography. *See Cunningham*, 694 F.3d at 389. In those situations, a stipulation that evidence contains child pornography satisfies the content element but does nothing to prove knowledge. *See United States v. Finley*, 726 F.3d 483, 491–94 (3d Cir. 2013).

In this case, Long's stipulation reduces greatly the exhibits' probative value vis-à-vis image content. But it sheds little light on Long's knowledge, while the photos and video montage remain highly probative of that element. Long's stipulation that "the images are of child pornography and depict a 'lascivious exhibition of the genitals,'" App. 185, does not help jurors decide whether Long knew that the images portrayed actual minors. In contrast, seeing the photos and video montage would give jurors the same vantage that Long had, which would help them determine whether Long knew the

12

subjects were minors when he viewed the photos. So the District Court erred when it summarily concluded that "there would be no real need to show the exhibits" because Long "is stipulating as to a written description of" the exhibits. *Long*, 2022 WL 15523192, at *3 n.1.

In short, the District Court overestimated the extent to which the written descriptions in the stipulation reduce the exhibits' probative value under Rule 403. And that contributed to the Court's misimpression that it was "obvious" the exhibits' risk of unfair prejudice substantially outweighed their probative value. *Id.* at *2.

B

Not all prejudice is unfair prejudice, and Rule 403 bars only the latter. *Heatherly*, 985 F.3d at 266. Evidence that reveals a defendant's legal guilt can be highly prejudicial, but that alone does not make it unfairly so. *See id.* Instead, a risk of *unfair* prejudice exists when "concededly relevant evidence [can] lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. For example, evidence that triggers negative emotional reactions can cause unfair prejudice if it "arouses" a jury's "sense of horror," or "provokes its instinct to punish." *Lesko v. Owens*, 881 F.2d 44, 55 (3d Cir. 1989) (citation omitted). We have excluded evidence that contained "highly reprehensible and offensive content that might lead a jury to convict because it thinks that the defendant is a bad person and deserves punishment, regardless of whether the defendant committed the charged crime." *United States v. Welshans*, 892 F.3d 566, 576 (3d Cir. 2018) (citation omitted). Still, "Rule 403 is not a shield to keep juries from learning details of horrific crimes." *Heatherly*, 985 F.3d at 266 (citation

omitted). And a district court "is not required to scrub the trial clean of all evidence that may have an emotional impact." *Cunningham*, 694 F.3d at 391 (quotation omitted).

Additionally, the possibility that evidence will cause unfair prejudice does not automatically justify exclusion; rather, that risk must substantially outweigh the probative value of the evidence. *See United States v. Womack*, 55 F.4th 219, 234 (3d Cir. 2022). Accordingly, "when evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *Id.* (cleaned up). This reflects the reality that sometimes "exhibits [a]re disturbing because the alleged crimes themselves [a]re extraordinarily disturbing." *Heatherly*, 985 F.3d at 266. It's true that we have identified a heightened risk of unfair prejudice when pornographic content involves violence, bondage, or bestiality. *See Welshans*, 892 F.3d at 575–76; *Cunningham*, 694 F.3d at 390–91. That's because such content is likely to "generate[] intense disgust, far beyond even other child pornography." *Welshans*, 892 F.3d at 575 (cleaned up).

The District Court in this case found that the exhibits "are graphic and are likely to provoke a visceral and emotional reaction for the jurors, and thus pose at least a risk of unfair prejudice." *Long*, 2022 WL 15523192, at *3. Yet without viewing any of the exhibits, the District Court was not able to balance the risks against the probative value of the proffered evidence.

We will remand for the District Court to conduct a proper 403 analysis in the first instance. In addition to any other factors the District Court may deem relevant, it should consider the following five issues.

14

*First*, Long's alleged possession of child pornography involving victims under the age of 12 years old *is* the crime charged in the indictment. *See* 18 U.S.C. § 2252. This likely reduces the risk that a jury might see the exhibits and convict Long for reasons other than his commission of the charged crime. If jurors feel disgust towards Long based on a belief that he intentionally collected child pornography, they are judging him for committing the charged offense. As in *Heatherly,* the emotional impact of the evidence stems from the disturbing nature of the alleged crime, not some extraneous concern. After all, Rule 403 "does not protect defendants from devastating evidence in general." *Heatherly*, 985 F.3d at 266.

*Second*, the photos do not contain sexual acts, and the video montage, though more graphic and offensive, does not contain the sort of egregious content that supported a finding of unfair prejudice in *Cunningham* and *Welshans*. While the exhibits are offensive, they are no more heinous than other evidence we have permitted for similarly probative reasons. Examples include material involving "a tied-up baby being anally penetrated" as evidence of knowledge in a conspiracy to receive child pornography case, *Heatherly*, 985 F.3d at 264, and videos involving "oral sodomy" as evidence of knowledge in a possession and distribution case, *Finley*, 726 F.3d at 493; *see id.* at 493–94. The exhibits here are, at worst, comparable to other materials we have found permissible.

*Third*, the Court should consider whether the Government has less egregious photos and videos it can offer for the same evidentiary propositions. In both *Welshans* and *Cunningham*, the Government had less grotesque exhibits with largely the same probative value, which factored into the courts' findings of unfair prejudice. *See Heatherly*, 985 F.3d at

15

268 (citing *Welshans*, 892 F.3d at 575–76). There have been no such findings here.

*Fourth*, the parties did not give the District Court a written description of the video montage. Instead, they summarized the four videos from which the montage was compiled—without stating which parts of those videos are included in the montage. As the Government now explains, the written descriptions of the longer videos describe certain graphic conduct that is not included in the video montage. So the Court's Rule 403 assessment of the video montage was procedurally flawed because a "court should know what the challenged evidence actually is" through a "sufficiently detailed description" before ruling on admissibility if the court declines to view the exhibit. *Cunningham*, 694 F.3d at 386–87.

*Fifth*, *Cunningham*'s dicta is not an invitation to deny the admission of highly distasteful evidence. If photos of naked children displaying their genitals are so obviously inadmissible under Rule 403 that a court need not view them, then virtually all child pornography is presumptively inadmissible when a defendant stipulates to the content of the images. This would cause *Cunningham*'s narrow exception to swallow the rule that courts should generally view contested evidence.

For all these reasons, without viewing the exhibits, it is far from "obvious" that the risk of unfair prejudice from the disturbing nature of the exhibits substantially outweighs their probative value as to Long's knowledge.

C

The District Court raised additional Rule 403 considerations involving cumulativeness, wasting time, and

16

jury confusion, and expressed concern about revictimization based on Supreme Court precedent in *Paroline v. United States*, 572 U.S. 434 (2014). *Long*, 2022 WL 15523192, at *2–4, *4 n.2. None of these concerns make it "obvious" that the exhibits fail Rule 403's balancing test.

The District Court reasoned that the image filenames, the Court-ordered written descriptions, and the expected testimony from law enforcement on the materials they found would make the exhibits substantially cumulative compared to their probative value under Rule 403. But original exhibits offer uniquely probative value to a jury as compared to secondhand descriptions of exhibits. It is thus far from "obvious" that the potentially cumulative nature of the exhibits substantially outweighs the probative value of admitting any of the exhibits (or appropriate alternatives).

Additionally, in a trial for possession of child pornography, it is not a waste of time for the parties to question prospective jurors during voir dire about child pornography or for a court to issue cautionary instructions. While admitting some exhibits may require additional time for voir dire and instructions, doing so is not wasteful. Rather, the extra work is essential to ensure a fair trial for both parties. And the District Court's concern over jury confusion is unpersuasive because there is no reason to believe that jurors would be confused by direct evidence of Long's alleged crime. *See Welshans*, 892 F.3d at 577 (explaining that juries are presumed to follow instructions).

Finally, the District Court was reluctant to view the exhibits because it believed Supreme Court precedent cautions against viewing child pornography exhibits. *See Long*, 2022 WL 15523192, at *2 (citing *Paroline*, 572 U.S. at 457–58). We

17

read *Paroline* differently. In that case—which dealt with calculating restitution for child pornography victims—the Supreme Court noted that "every viewing of child pornography is a repetition of the victim's abuse." *Paroline*, 572 U.S. at 457. This language—which the District Court quoted—is couched in the context of "[t]he *unlawful conduct* of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . [and] plays a part in sustaining and aggravating th[e] tragedy." *Id.* (emphasis added). In other words, it is wrongful conduct that perpetuates victimization. Nothing in *Paroline* suggests that courts should avoid the awful burden of viewing child pornography exhibits when doing so is necessary for the court to discharge its judicial duties.

IV

The Supreme Court has cautioned that "questions of relevance and prejudice are for the District Court to determine in the first instance." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). We too have recognized that "a trial court is in a far better position than an appellate court to strike the sensitive balance dictated by Rule 403." *United States v. Mathis*, 264 F.3d 321, 338 (3d Cir. 2001) (cleaned up).

For these reasons, we decline the Government's request that we balance the contested evidence under Rule 403. The prudent course in view of the procedural error we have identified is to vacate and remand so the District Court can conduct a fulsome Rule 403 analysis after viewing the contested evidence.

\* \* \*

For the reasons stated, we will vacate the order of the District Court and remand so it can conduct Rule 403 balancing anew after viewing the exhibits proffered by the Government.