**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-3208

———————

UNITED STATES OF AMERICA

v.

CHARLENE MARSHALL,
Appellant

———————

On Appeal from the District Court
for the Middle District of Pennsylvania
(D.C. No. 1:21-cr-00026-004)
District Judge: Honorable Christopher C. Conner

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
February 6, 2026

Before: HARDIMAN, MONTGOMERY-REEVES, and ROTH, Circuit Judges

(Filed: March 24, 2026)

———————

OPINION[*]

———————

---

[*] This disposition is not an opinion of the full Court and pursuant to 3d Cir. I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Charlene Marshall appeals her judgment of conviction following a jury trial. We will affirm.

I

Marshall was tried with her co-conspirator, Rohan Lyttle, who managed a fraud scheme that preyed on the elderly. The essential facts of the scheme are explained in our decision in *United States v. Lyttle*, --- F.4th ----, 2026 WL 731249, at *1–2 (3d Cir. 2026), so we need not repeat them here.

Marshall was indicted on two counts: (1) conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. § 1349 (Count 1); and (2) conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) (Count 9). A jury found her guilty on both counts and the District Court sentenced her to 34 months' imprisonment followed by a 3-year term of supervised release. She was also ordered to pay restitution of $245,148.

Evidence at trial established that Marshall laundered money obtained from an advance-fee lottery scam perpetrated by Jamaican nationals (like herself). The scam involved someone posing as "Andrew Goldberg"—the former CEO of the Publisher's Clearinghouse—who would tell elderly victims that they were sweepstakes winners. Marshall's role was to launder money.

For example, after illicit packages containing cash were received at Ro-Cars, she often deposited substantial amounts of cash into two of her personal bank accounts. Marshall used multiple ATMs and twelve different bank branches to structure these

transactions. She deposited nearly $89,000 in cash into two personal bank accounts in 2020, but did not report any of that money as income or otherwise explain how she had obtained it. The year before, Marshall had only $5,968 in cash receipts. And the majority of her 2020 deposits—over $85,000 from June to October 2020—coincided with the arrival of cash remittances sent by victim Thomas Trouton, some of which were sent directly to Marshall's residence. Meanwhile, she reported only $32,425 in income on her 2020 federal tax return.

Marshall would obtain cashier's checks—using the illicitly obtained funds—that her co-conspirators used to purchase vehicles to overhaul and ship to Jamaica for resale. Bank records established that Marshall listed Lyttle's home address as her residence on her banking profiles, further indicating that the two—along with their other co-conspirators—were working together on these illicit financial transactions.

Over Marshall's objection, the District Court entered Exhibit 296, a summary chart depicting Marshall's reported income for the years 2017 through 2020, into evidence. She reported income of: zero in 2017; $670 in 2018; $15,139 in 2019; and $32,425 in 2020—far less than the nearly $89,000 she had in cash receipts in 2020 alone.

II[1]

Marshall contends that the District Court abused its discretion by admitting: (1) Exhibit 296 (the summary of her tax returns) into evidence in violation of Rules 401,

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(A). We review a district court's decision to admit evidence for abuse of discretion, which occurs only when "no reasonable person would

403, and 404(b) of the Federal Rules of Evidence; and (2) Exhibit 220 (the advance-fee lottery scam video), discussed in *Lyttle*, 2026 WL 731249, at *2, into evidence in violation of both Rules 401 and 403.

As for Exhibit 296, the evidence from Marshall's tax returns was relevant because it had a "tendency to make a fact more or less probable," *i.e.*, whether Marshall participated in a money laundering scheme. *See* Fed. R. Evid. 401. Money laundering schemes involve attempts to hide or obscure financial transactions. So Marshall's tax returns were relevant to determine whether she received funds through lawful means.

Nor did the District Court run afoul of Rule 404(b)(1)'s bar on character evidence. The rule prohibits the introduction of evidence of "any other crime, wrong, or act" to prove a person's act in conformance with bad character. Fed. R. Evid. 404(b)(1). But the Government did not seek to use Marshall's tax returns to prove that she had a particular trait or acted in accordance with that trait. Instead, the Government proffered the tax returns to show that Marshall was involved in a cash-intensive money laundering operation—and how she "facilitate[d] the commission of" that scheme. *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010) (citation modified). Such a theory, we have held, falls outside the scope of Rule 404(b). *United States v. Cammarata*, 145 F.4th 345, 366–67 (3d Cir. 2025) (holding that tax return evidence was "intrinsic" and thus outside

---

adopt the district court's view." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (citation modified).

the scope of Rule 404(b) when it was used to "support[] a reasonable inference that" the defendant "was attempting to conceal income derived from his fraudulent scheme").

The evidence also was admissible under Rule 403(b) because, as the District Court held, the "probative value of the evidence substantially outweigh[ed] any risk of unfair prejudice or of confusing or misleading the jury." App. 101. Any prejudice stemming from the admission of Marshall's tax returns was hardly unfair, let alone so unfair as to substantially outweigh the probative value of the tax returns. Fed. R. Evid. 403. The tax return evidence went directly to whether she was laundering money. *See United States v. Long*, 92 F.4th 481, 488 (3d Cir. 2024) ("Not all prejudice is unfair prejudice.").

Marshall's argument about Exhibit 220, the news clip discussing Jamaican lottery scams, also fails. We hold that its admission did not violate Rules 401 or 403 essentially for the same reasons we explained in *Lyttle*, 2026 WL 731249, at *6.

We conclude with a few observations regarding Marshall's Rule 403 challenge.[2] The District Court's limiting instruction made clear that the Government's circumstantial evidence was "admitted only to show that *whoever accessed the video* may have had the knowledge of or familiarity with a lottery scam." App. 653 (emphasis added). One of the Government's witnesses acknowledged there was no indication that Marshall ever used the Ro-Cars office computer, so she could not have been the one to access the video. And during its summation, counsel for the Government referenced the video and argued that

---

[2] Because Marshall did not argue in the District Court that the video was "racially biased," we do not consider that argument for the first time on appeal. *See, e.g., United States v. Grant*, 9 F.4th 186, 199 (3d Cir. 2021) (en banc); *United States v. Price*, 458 F.3d 202, 206 (3d Cir. 2006).

Lyttle, not Marshall, had viewed the video. That fact, along with the District Court's limiting instruction, leads us to conclude that the video did not unfairly prejudice Marshall.

* * *

For the stated reasons, we will affirm the judgment of conviction.