**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1983
_____

UNITED STATES OF AMERICA

v.

JOSEPH CAMMARATA,
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 3:22-cr-00639-001)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on December 2, 2025

Before: CHAGARES, *Chief Judge*, FREEMAN and MASCOTT, *Circuit Judges*

(Opinion filed: April 7, 2026)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Joseph Cammarata appeals his conviction for five counts of tax evasion. For the following reasons, we will affirm the judgment.

**I**

Cammarata and two co-conspirators, Erik Cohen and David Punturieri, ran a securities fraud scheme from at least 2015 to 2019. Through the scheme, they made over $40 million by submitting false claims in securities class actions across the United States.

In 2021, all three co-conspirators were indicted in the Eastern District of Pennsylvania on various fraud and money-laundering charges related to the securities fraud scheme. *See United States v. Cammarata*, 145 F.4th 345, 359 (3d Cir. 2025). In 2022, while Cammarata was awaiting trial in that case (the "Securities Fraud Case"), a grand jury in the District of New Jersey returned an indictment charging him with five counts of tax evasion, in violation of 26 U.S.C. § 7201. The latter case (the "Tax Evasion Case") is the one at issue here.

The indictment in the Tax Evasion Case charged Cammarata with attempting to evade his tax obligations by filing fraudulent tax returns for five calendar years: 2015 to 2019. The indictment alleged several affirmative acts in support of each count, including that Cammarata failed to report his income from the securities fraud scheme.

The government provided voluminous discovery to Cammarata's counsel in the Tax Evasion Case. The initial discovery included only tax-related materials, but by March 2023 the government also provided the entire discovery production from the Securities Fraud Case.

2

After Cammarata was convicted and sentenced in the Securities Fraud Case, the District Court granted Cammarata's motion to represent himself in the Tax Evasion Case.[1] The court required both attorneys who had been representing Cammarata to remain in the case as standby counsel.

Shortly before trial was scheduled to begin in the Tax Evasion Case, Cammarata stated he did not have an adequate opportunity to review the discovery, but he also expressed a desire for trial to begin immediately. The District Court colloquied Cammarata about those positions, and Cammarata confirmed that he was prepared to proceed and wished to do so. Trial began the next day.

During trial, Cohen and Punturieri testified for the government.[2] Cohen testified that he and Cammarata "had discussed not filing on what we had taken in, just to keep more money." Supp. App. 942. Cohen further testified that Cammarata recommended using Eisner CPA as accountants because they were "disastrous," so "if there was ever an issue with the IRS, [Cammarata] would just say that it was a mistake on their end and it was not on him." Supp. App. 584–85. Cohen and Punturieri testified that, for each calendar year charged in the indictment, they would put together a spreadsheet of profits and then Cammarata would alter the numbers before submitting the spreadsheet to his accountants for tax purposes. In 2016, Cammarata told Cohen that the two men would

---

[1] Cohen and Punturieri each pleaded guilty to two counts in the Securities Fraud Case, and a jury convicted Cammarata of eight counts. *Cammarata*, 145 F.4th at 359–60.

[2] Cohen and Punturieri were charged with tax evasion in separate indictments. After Cammarata's conviction in the Tax Evasion Case, each of them pleaded guilty to one count of tax evasion.

not get caught for filing false returns if they were consistent about the numbers, so Cohen started filing false returns, too. And when Cammarata learned that Punturieri filed a tax return that reported some of his fraudulent income, Cammarata got angry and directed Punturieri to "fix it." Supp. App. 587. All three co-conspirators decided that they would not accurately report their income in the future.

The government introduced a summary chart of Cammarata's fraudulent income ("Exhibit G-1001") that a lay witness prepared. The government also introduced a second summary exhibit ("Exhibit G-1004") through the testimony of its tax computation expert, IRS Agent Thomas Mazur. Although Mazur did not prepare Exhibit G-1004, he testified that he verified the figures in that exhibit were accurate before using the figures in his expert report.

The jury found Cammarata guilty of all five counts, and the District Court denied Cammarata's motions for judgment of acquittal and a new trial. After sentencing, Cammarata timely appealed.

**II**[3]

Cammarata raises four challenges to his conviction. None of them is availing.

A

Cammarata argues that the District Court erred in denying his motion for a judgment of acquittal. When he filed that motion in the District Court, he argued the

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

government presented insufficient evidence of the "tax due and owing" element of the tax evasion offense. On appeal, Cammarata argues that the government presented insufficient evidence of a different element: willfulness. Because Cammarata did not raise his willfulness argument in the District Court, we review it for plain error. *See United States v. Jackson*, 849 F.3d 540, 544 (3d Cir. 2017). We discern no error, plain or otherwise. Cohen's and Punturieri's testimony that Cammarata falsified financial data to keep more money and advised them to do the same is sufficient evidence of Cammarata's willful tax evasion.

B

Cammarata also argues that the District Court improperly admitted evidence of the securities fraud scheme during trial in the Tax Evasion Case. We review the court's decision to admit evidence for abuse of discretion. *United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000).

Although Cammarata purports to appeal the admission of all securities fraud evidence, at trial he stated that he was "okay with" the admission of securities fraud evidence from on or before December 31, 2019. Supp. App. 221. Thus, he waived any challenge to the evidence from 2019 or earlier. *See United States v. James*, 955 F.3d 336, 344–45 (3d Cir. 2020).

We review only Cammarata's challenge to the post-2019 evidence, which includes the tax return he filed in October 2020 for tax year 2019, plus certain statements he made in 2020 to an undercover federal agent in connection with a fraudulent claim he submitted. He does not dispute that evidence of the securities fraud scheme—including

5

the post-2019 evidence—was intrinsic to the charges in the Tax Evasion Case. After all, it is probative of Cammarata's unreported taxable income during the period charged in the indictment. *See Boulware v. United States*, 552 U.S. 421, 424 (2008) ("One element of tax evasion under § 7201 is the existence of a tax deficiency." (internal quotation omitted)). Instead, he argues that the District Court should have excluded the post-2019 evidence under Federal Rules of Evidence 403 and 404(b).

Rule 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. But while "[i]nstrisic evidence 'that reveals a defendant's legal guilt can be highly prejudicial, . . . that alone does not make it unfairly so.'" *Cammarata*, 145 F.4th at 368 (quoting *United States v. Long*, 92 F.4th 481, 488 (3d Cir. 2024)). Here, the District Court did not abuse its discretion under Rule 403 in concluding any prejudice from the post-2019 evidence did not substantially outweigh the probative value.

Rule 404(b) governs the permissible uses of "other crimes" evidence. Fed. R. Evid. 404(b). As such it applies only to extrinsic evidence. *United States v. Bailey*, 840 F.3d 99, 128 (3d Cir. 2016). Intrinsic evidence "directly proves the charged offense," so it is not evidence of "*other* crimes." *Id.* (cleaned up). Therefore, Rule 404(b) did not apply here.

C

Cammarata next argues that the government constructively amended the indictment by presenting evidence regarding falsified tax returns (a violation of 26 U.S.C. § 7206), when he was charged with tax evasion (a violation of 26 U.S.C. § 7201).

6

Because Cammarata did not raise this objection at trial, we review for plain error. *Cammarata*, 145 F.4th at 360.

"A constructive amendment occurs where trial evidence or arguments modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense charged in the indictment." *Cammarata*, 145 F.4th at 361 (cleaned up). The "key inquiry" is thus "whether the defendant was convicted of the same conduct for which he was indicted." *Id.* (cleaned up).

A conviction under § 7201 requires an affirmative act of tax evasion. *Sansone v. United States*, 380 U.S. 343, 351 (1965). The indictment alleged that Cammarata engaged in several affirmative acts, including filing false and fraudulent tax returns for the applicable calendar year of each of his five counts. Because the government presented evidence of the affirmative acts alleged in the indictment, there was no constructive amendment.

## D

Lastly, Cammarata argues the District Court should have granted his motion for a new trial because the government purportedly violated *Brady v. Maryland*, 373 U.S. 83 (1963), and failed to comply with its expert discovery obligations.

Of the six purported *Brady* violations and discovery deficiencies, Cammarata only raised three in his Rule 33 motion. Under Rule 33, "a judge has no power to order a new trial on his own motion." *United States v. Wright*, 363 F.3d 237, 248 (3d Cir. 2004) (quoting Fed. R. Crim. Proc. 33, Advisory Committee Notes, 1966 Amendments).

Therefore, we will not reach the merits of the arguments Cammarata did not include in his Rule 33 motion.[4] *See id.*

As to the arguments Cammarata did raise in his Rule 33 motion, we review the District Court's ruling for abuse of discretion. *United States v. Kelly*, 539 F.3d 172, 181 (3d Cir. 2008). A district court may grant a Rule 33 motion if it "believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (citation modified).

The District Court did not abuse its discretion in denying Cammarata's motion. First, Cammarata argues the government violated *Brady* by not providing all documents used to develop Exhibit G-1001. But Cammarata does not argue that the government withheld those documents from the defense. He argues only that, after he obtained permission to represent himself, he was unable to review the documents the government provided to his attorney when he was represented by counsel. A *Brady* violation requires the suppression of evidence, and there was none here. *See United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005).[5]

---

[4] This applies to the arguments that (1) the government violated *Brady* by not providing Cammarata's IRS Forms 1042-S and related payment confirmation letters; (2) the government violated *Brady* by not providing Plan of Action forms from each class action settlement claims administrator involved in the securities fraud scheme; and (3) the District Court erred in admitting Exhibit G-1001 because it was prepared by a lay witness.

[5] Cammarata has waived any argument that he did not have the opportunity to review the documents that were produced.

Second, Cammarata argues the government did not comply with its expert discovery obligations under Federal Rule of Criminal Procedure 16 because it did not provide a written summary of Mazur's anticipated expert testimony. But the record includes an email from the government to Cammarata's then-counsel that belies this argument.

Third, Cammarata argues that the District Court erred by permitting the government to introduce Exhibit G-1004 through Mazur, who did not personally prepare that document. But there is no requirement that the preparer of a summary exhibit testify. Rather, a district court may admit a summary exhibit if it "accurately summarizes the materials involved." *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 301 (3d Cir. 1961). Agent Mazur testified that he verified the accuracy of the figures in Exhibit G-1004, so the District Court acted within its discretion when it admitted the exhibit.

\* \* \*

For the forgoing reasons, we will affirm the judgment.